# SUPERIOR COURT,

## FALL SESSIONS,

## 1891.

———•———

ELIAS SHOCKLEY and minor son DAVID SHOCKLEY, d. b. a., *v.*
· JOSEPH B. SHEPHERD for use of son ALEX. SHEPHERD, p.
b. r.

*Master and Servant — Parents — Driving on Public Road—*
*Damages.*

The father is not liable for damages occasioned by the reckless and unlawful driving
of his minor son.

When two persons driving upon the public road are approaching each other, each
must keep to the right. A collision occasioned by the failure of one of the
parties to observe this rule while driving in the evening and at a fast gate ren-
ders the guilty party liable for damages resulting therefrom.

*(Sussex, October Term, 1891.)*

APPEAL from Justice of the Peace.

*A. P. Robinson,* for appellant.

*C. W. Cullen,* for respondent.

COMEGYS, C. J., charging the jury :

*Gentlemen of the Jury :* This seems to be a very simple case.
It is an action brought by the respondent here to recover damages

for a collision that occurred on the highway in Cedar Creek Hundred, this county, and alleged on the part of the respondent to have been caused by the reckless driving of one of the defendants in this case, who is the son of the other defendant. I desire to say to you now, lest I may forget it, that if it has been proved to your satisfaction by the testimony given that this collision was caused by the reckless, willful act of the son, the father would not be liable at all. The father is liable for all the wrongful acts of his son which are committed while the son is in the father's service and acting in that capacity as his agent at the time; and for all carelessness or negligence or anything of that kind, then, the master or father, here, would be liable; but for any willful act not performed in the service of the master, the employer or the father, they would not be liable. So, if you believe, according to testimony in this case, a verdict ought to be rendered for the respondent here (who was the plaintiff below), that verdict ought to be against David Shockley, and not the father.

Now the question is whether any verdict ought to be rendered against him at all. That is a matter for you to decide when you have listened to what I have to say about the law of travel upon the public road. The law of this State is, and has been for a long time, that when two persons driving upon the public road are approaching each other, each shall keep to the right; then there will never be a collision between them. A man driving along the highway in the proper way will not be obliged to get out of the way of the party whom he is meeting. It is the duty of that person to keep on his side of the road and not to drive the other person from the side of the road he is to occupy. The respondent in this action was on the right-hand side of the road—just exactly where he ought to be—and while he was driving along with his horse in a walk, according to the testimony of the young lady with him (now his wife), he discovered these vehicles approaching on the same side of the road that he was on (where they had no business to be at all), and seeing that they were on his side of the road, he did what a

great many people would not have done—that is, he varied from the legal and appropriate course that he was taking at the time so far as to get into the fence as close as he could, in order to avoid this collision, exercising thereby extraordinary care on his part. According to the testimony, these people who were coming towards him could see him a distance of 30 or 40 yards, but they still kept on the same side of the road, probably trusting that the respondent would go away from the track where he had a perfect right to be. He, apprehending danger, saw proper to give warning, which Mr. Morgan, who was in the vehicle ahead, says he heard; and he responded to that warning cry and turned out, but the other party did not do it; for if he had turned out, this collision never would have happened. According to the testimony, there is exactly the case before you: one man on the right-hand side of the road, where he had a right to be and where the law says he should be when vehicles are passing, endeavoring to get as far from the approaching team as he possibly could, to avoid collision, and the other person coming up to him driving along the road at a very fast pace (eight or ten miles an hour, and not shown to be less than eight miles), and that in the evening an hour after sunset. When this is connected with the fact that the driving was on the wrong side of the road, it shows an act of willful negligence on his part, and of course he must be responsible for all the consequences which resulted from this recklessness.

If you believe the testimony produced on the part of the respondent in this case, he is entitled to recover whatever damages have been proved to you to have been sustained by him,—and I will state to you that the testimony on the part of the respondent is corroborated by the testimony of the witness Mills, who was in the vehicle which came into collision with that of the respondent. I can see no good ground for any defence in this action whatever, as it seems to be a case where there was gross carelessness on the part of this driver, in consequence of which the other person, who was attempting to keep out of the way, was run into and injured.

So, I repeat, that if you are satisfied with the testimony on the part of the respondent, he is entitled to recover such damages against young Shockley as he has proved he has sustained; if you are not satisfied with this testimony, of course your verdict should be in favor of the appellant.

Verdict in favor of the respondent for $15.00 damages.